MATTESON-FOGARTY-JORDAN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5596. Decided November 10, 1926.

*H. W. Welsch, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

LITTLETON: This proceeding involves the determination of a deficiency in income and profits taxes for the period of five and one-half months from July 15, 1919, to December 31, 1919, in the amount of $3,213.64, resulting from the Commissioner's denial of the petitioner's claim for classification as a personal service corporation under section 200 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The petitioner is an Illinois corporation organized in July, 1919, to operate, manage and conduct a general advertising business, with principal office in Chicago. Its authorized capital stock of $25,000 was subscribed and paid for in cash by the following stockholders, who were also directors and officers of the company:

| Name. | Office. | Number of shares. | Per cent. |
|---|---|---|---|
| J. F. Matteson | President | 93¾ | 37.50 |
| C. C. Fogarty | Treasurer | 93¾ | 37.50 |
| W. A. Jordan | Secretary | 62½ | 25 |
| | | 250 | 100 |

The petitioner expended $3,808.52 for office furniture and equipment. Each of the three stockholders took out a life insurance policy for $50,000, payable to his estate, the premiums upon which, amounting to $2,087.50, were paid by the petitioner. Petitioner purchased for $100 and owned during the period involved one share of stock in the American Association of Advertising Agencies. These expenditures left a balance in cash of about $19,000. Throughout the remainder of the year an average cash balance of $18,392.23 was maintained, ranging from $3,489.27 to $38,300.45.

The three stockholders were regularly engaged in the active conduct of the affairs of the corporation and devoted their entire time thereto. No solicitors were employed. All business from advertisers was secured by the three stockholders. The petitioner did not

employ any artists or printers. Petitioner contracted with outside artists and printers to do this work and charged the advertiser with the cost thereof, plus a stated amount in addition. At December 31, 1919, petitioner had fourteen employees on its payroll—eleven women and three men—who did clerical, filing, typing and stenographic work in the office.

When petitioner had been engaged by anyone to prepare an advertisement Matteson, Fogarty, or Jordan, or the three of them, would make a thorough investigation of the best methods of merchandising the product or article, which the advertiser had for sale—whether it would be more advantageous to sell by mail or direct, or through agents or dealers. The investigation included a study of the markets in territories in which there was a possible demand for the product or article to be sold, together with a study of similar products and competitive market prices. In the case of a new product or article, they would make suggestions as to the price at which it should be sold and the territory in which it could best be sold. Through their experience and training in advertising methods, in making analyses of markets, together with their knowledge of publications, circulation and rates, petitioner's stockholders would suggest to the advertiser the procedure which, in their opinion, should be followed and the publications which should be used to introduce the product or article to the public. In general, after they had made a study of the advertiser's business, product and sales organization, they would advise him as to the best and most advantageous method of advertising the product or article and the price at which it should be sold.

As a part of their work the stockholders prepared the advertising copy. After the copy had been prepared and the media of advertising had been approved by the advertiser, the petitioner would forward the completed advertisement to the publisher with instructions concerning its insertion in the publication.

When the publication had been agreed upon, petitioner would transmit to such publication an order, disclosing the name of the advertiser, for a certain number of lines of space in current publications or issues. Usually, but not always, the order would be accompanied by a copy of the advertisement. At times when an advertiser had agreed to use space in future issues, the petitioner would forward to the publisher an order reserving space for the advertisement of the particular advertiser. The object of making reservations in advance was to secure a preferred location, and when a large amount of space was reserved a better rate could be secured.

The income of the petitioner consisted of commissions allowed by publishers at a rate of 15 per cent of the amount of the cost of the advertisement and a charge made to the advertiser upon the cost of art work and printing. The publisher rendered its statement for the cost of the advertisement to the petitioner and allowed a dis-

count if the same was paid within a specified time. Petitioner always paid the publisher on or before the discount date, whether it had been paid by the advertiser or not. Petitioner rendered a statement to the advertiser which called for payment of the cost of the advertisement, including its 15 per cent commission, on a date prior to the date on which it was required to pay the publisher. If the advertiser paid the petitioner before the discount date fixed by the publisher, petitioner in turn allowed the advertiser the discount obtained from the publisher; otherwise petitioner retained the discount.

During the taxable period total billings by petitioner to advertisers aggregated $301,027.78, and of this amount 56 per cent, or $168,370.48, was received by the petitioner prior to the date on which it paid the publisher, and $132,657.30, or 44 per cent, was received by the petitioner from the advertiser after the publisher had been paid. There were no written contracts between either the advertiser and petitioner, or between the petitioner and the publisher, the matter being agreed upon between the advertiser and the petitioner in conference, and the publisher acted upon the written order forwarded by the petitioner. The advertiser was privileged to withdraw his account from petitioner at any time and transfer it to another, retaining the advertising space in his own name under the same terms. The Curtis Publishing Co. did not see fit during the early months of petitioner's operations to receive and publish advertisements upon petitioner's orders, and required payment for advertisements to be made in advance. Petitioner made such payments in excess of $5,000. Thereafter petitioner rendered statements to the advertiser for the cost of advertisements inserted in publications of this company in the same manner as statements were rendered for charges made by other publishers who did not require advance payment. The Curtis Publishing Co. discontinued this requirement in December, 1919, and thereafter billed petitioner after publication of the advertisement. The extension of credit by publishers and the continued recognition of the petitioner as one entitled to the 15 per cent commission upon the cost of advertisements, were dependent upon prompt payment of the publishers' charges.

The gross income and deductions for the taxable period from July 15, 1919, to December 31, 1919, were as follows:

| Gross income. | | Deductions. | |
|---|---|---|---|
| Commissions | $42,323.91 | Employees' salaries | $10,184.51 |
| Interest | 130.95 | Other expenses | 7,129.10 |
| | | Bad debts | 144.11 |
| | 42,454.86 | Officers salaries | 11,000.00 |
| | 28,457.72 | | |
| | | | 28,457.72 |
| Profit | 13,997.14 | | |

The balance sheet at December 31, 1919, was as follows:

| Assets. | | Liabilities. | |
|---|---|---|---|
| Cash | $8, 847. 52 | Cash discount | $562. 53 |
| Stock | 100. 00 | Accounts payable | 7, 699. 21 |
| Accounts receivable | 32, 415. 34 | Capital stock | 25, 000. 00 |
| Furniture and fixtures | 3, 808. 52 | Surplus | 13, 997. 14 |
| Insurance | 2, 087. 50 | | 47, 258. 88 |
| | 47, 258. 88 | | |

The accounts receivable due from advertisers which the petitioner had paid to publishers at the end of the year, amounted to $32,415.34. Petitioner's commission from said amount at the rate of 15 per cent was $4,862.30. Deducting the commission and accounts payable of $7,699.21 from the amount paid by petitioner to publishers prior to collection from advertisers, leaves $19,853.83.

> *Judgment will be entered for the Commissioner.*